UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILE NO.

| | | |
|---|---|---|
| MARIAH GRADE | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| | : | |
| | : | **COMPLAINT** |
| CITY OF CHARLOTTE, | : | (Jury Trial Requested) |
| Defendant. | : | |
| | : | |
| | : | |

_____

COMES NOW the Plaintiff, MARIAH GRADE (hereinafter "Plaintiff"), by and through her undersigned attorney, hereby files this Complaint for damages and other legal and equitable relief from Defendant, CITY OF CHARLOTTE (hereinafter "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*

**NATURE OF THE CASE**

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of discrimination. Defendant's acts of discrimination are in violation of Title VII, the Americans with Disabilities Act, and any other causes of action that can be inferred from the facts set forth herein.

2. Plaintiff is employed by Defendant at 500 Dalton Ave, Charlotte, NC 28206. Throughout Plaintiff's employment with Defendant, Plaintiff has been subjected to discrimination and retaliation based on disability and race, in violation of Title VII and other applicable statutes.

1

**JURISDICTION & VENUE**

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq.,* as amended, and (iii) 42 U.S.C. §§ 1981 *et seq.,* as amended.

4.  In addition to the above referenced federal claims, this complaint all asserts claims arising under the laws of the State of North Carolina, specifically intentional infliction of emotional distress and negligent infliction of emotional distress. The state law claims are sufficiently related to the federal claim such that the Court may exercise supplemental jurisdiction over them, as provided for under 28 U.S.C. § 1367. The state law claims arise out of the same common nucleus of operative facts as the federal claim, and they form part of the same case or controversy under Article III of the United States Constitution. No exceptional circumstances exist that would justify declining the exercise of supplemental jurisdiction over the state law claims.

5.  Venue is proper in this Court in as much as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c), and (d), in that Defendant maintains offices and conducts business in this district.

**PARTIES**

6.  The Plaintiff is a person who has been aggrieved by Defendant's actions. She is, and has been, at all relevant times, a resident of North Carolina.

7.  At all relevant times, Plaintiff is an African American female employee of the City of Charlotte Fire Department and therefore covered by Title VII.

8.  Upon information and belief, Defendant is organized by City Charter under § 160A of the North Carolina General Statutes with its principal office and place of business in Charlotte, Mecklenburg County, North Carolina, where it maintains and administers a fire department known as the Charlotte Fire Department which employs Plaintiff.

9.  Defendant transacted and continues to transact business in North Carolina by, among other things, employing persons at 1201 The Plaza, Charlotte, NC 28205 located within North Carolina and within this judicial district.

10. At all times herein mentioned, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq* having fifteen (15) or more employees, and as such was prohibited from retaliating against an employee for complaining of racial and disability discrimination and retaliation. Upon information and belief, Defendant employs more than 300 employees bringing it within the jurisdiction of the Americans with Disabilities Act (hereinafter "ADA").

11. To the extent it is applicable, Defendant has adopted a plan of insurance pursuant to N.C.G.S. § 160A-485 and has waived its immunity from civil liability.

### EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

12. Plaintiff, who has herein alleged claims pursuant to Title VII, has timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

13. On October 17, 2023, Plaintiff received her Notice of Right to Sue from the EEOC.

## STATEMENT OF FACTS

14. Plaintiff commenced employment as a Firefighter for Defendant located at 1201 The Plaza, Charlotte, NC 28205, in or around October 2019.

15. Upon information and belief, at all relevant times, Defendant employed a Human Resources Manager named Kim A. Sanders (hereinafter "Ms. Sanders"). Moreover, Ms. Sanders in her capacity as Human Resources Manager, possessed and exercised the necessary authority to act on behalf of the Defendant. This authority included, but was not limited to, making decisions, implementing policies, and undertaking actions that are central to the allegations contained herein. It is further alleged that such authority was vested in Ms. Sanders by virtue of her position as the Human Resources Manager and was acknowledged and accepted by the Defendant. Therefore, any actions or decisions made by Ms. Sanders in this capacity are attributable to the Defendant.

16. Upon information and belief, at all relevant times, Defendant employed a Chief Battalion named Kelvin Brim (hereinafter "Chief Brim").

17. Upon information and belief, at all relevant times, Defendant employed a Chief Battalion named Jeffrey Richardson (hereinafter "Chief Richardson").

18. Plaintiff initially sought employment with Defendant due to her lifelong goal of becoming a firefighter and fulfilling her duties as such.

19. Plaintiff's essential duties include but are not limited to: (1) putting out fires and performing general firefighting work in fire suppression and rescue activities; (2) serving as a first responder Emergency Medical Technician for calls within the City; (3) participating in fire drills; and (4) attending training classes.

4

20. Plaintiff has at all times relevant had the skills, experience, education for the position of firefighter.

21. Plaintiff reported directly to Captain Wallace.

22. Plaintiff possesses a severe and debilitating medical condition known as migraine.

23. This condition affects Plaintiff both mentally and physically, significantly impacting her daily life and my ability to engage in various activities.

24. Migraine is a chronic neurological disorder characterized by excruciating headaches, often accompanied by nausea, light sensitivity, and a host of other distressing symptoms. These migraine attacks can last for hours or even days, rendering Plaintiff unable to function normally during these episodes.

25. The unpredictable nature of migraines has hindered Plaintiff's ability to perform her job duties as a firefighter.

26. In or around June 2022, Plaintiff verbally requested a reasonable accommodation from Chief Richardson to assist her in performing her duties as a firefighter. Chief Richardson stated that he would get the information to Human Resource.

27. Plaintiff then received an email for Kim Saunders that included the ADA policy.

28. In response to the questions Plaintiff communicated to Ms. Saunders, Ms. Saunders called Ms. Grade directly in a very aggressive and hostile manner.

29. On or about July 14, 2022, Chief Brim and Chief Richardson confronted Plaintiff at the fire station and threatened to file a Class A violation against Plaintiff due to allegedly being rude to Kim Saunders.

30. On or about July 18, 2022, Ms. Grade completed and submitted the Reasonable Accommodation Request Questionnaire and Information Form.

31. On or about July 18, 2022, Dr. Tamara Survey (Plaintiff's doctor), completed the Medical Questionnaire.

32. On or about July 22, 2022, Ms. Sanders reached out to Plaintiff requesting to know whether she had the rook piercing during training and she responded that she had.

33. Plaintiff is able to perform the essential functions of the job with a reasonable accommodation.

34. Plaintiff was denied her reasonable accommodation upon her initial request via email on August 4, 2022, by Kim Sanders that stated in relevant part: "Wearing the ear rook piercing while on duty increased the possibility of personal risk to the wearer and by wearing material/metal that can conduct heat, can also cause injury during a fire… Reasonable accommodation seemed viable (putting a band aid over the rook piercing), but after confirmation from you that the earring was made of material that is not good for heat, the potential accommodation was no longer reasonable."

35. Plaintiff's email dated July 28, 2022, to Ms. Sanders, clearly evidences that Defendant's denial letter was maliciously incorrect, as the email explicitly states that that the ear rook is, "made of a material that is ***not*** a good conductor of heat/electricity."

36. Plaintiff complained to Chief Richardson of disparate treatment she received stemming from her disability.

37. Plaintiff was cited for a violation in connection with her wearing an ear rook for her medical disability in or around July 2022.

38. Plaintiff provided Ms. Sanders with doctor's notes, medical records and detailed explanations outlining her medical diagnosis and ear rook prescription.

39. Plaintiff is unable to take prescription medications for this medical condition due to previous allergic reactions.

40. Ms. Sanders suggested to Plaintiff that she use a hot or cold press to treat her chronic migraines. Upon information and belief, Ms. Sanders does not have a medical background.

41. Plaintiff's chronic migraines are not alleviated or improved by the application of hot or cold compresses.

42. Plaintiff informed Ms. Sanders of her medical illness and the need for her to wear an ear rook to remedy her illness.

43. Plaintiff informed Ms. Sanders that she suffers hours of excruciating pain every time she experiences an episode of her chronic migraines.

44. Plaintiff informed Ms. Sanders that wearing the ear rook has been the only successful remedy in treating / preventing her chronic migraines.

45. Plaintiff successfully completed Defendant's recruit school while wearing an ear rook.

46. Plaintiff successfully performed her duties as a firefighter while wearing an ear rook.

47. Plaintiff informed Ms. Sanders via email on July 28, 2022, that her ear rook was made of a material that does not conduct heat or electricity.

48. Despite Plaintiff's email to Ms. Sanders dated July 28, 2022, Ms. Sanders unjustly rejected the Plaintiff's legitimate request for a reasonable accommodation (placing a Band-Aid over her ear), falsely claiming that the Plaintiff had informed her that the ear rook was constructed from heat-incompatible materials.

7

49. Upon information and belief, similarly situated Caucasian women who share a comparable situation as Plaintiff have been noted with ear rook piercings and other piercings that do not adhere to the Defendant's grooming policy.

50. Defendant's grooming policy states that "Earrings shall not be worn, due to safety concerns."

51. Defendant's grooming policy states that "Necklaces may be worn, as long as they are not worn exposed on the outside of the uniform."

52. Defendant's grooming policy states that "No more than two (2) rings per hand shall be worn."

53. Defendant's grooming policy states that "No exposed body area shall have a piercing with any type of jewelry inserted. This includes tongue rings."

54. Defendant's grooming policy does not address ear rook piercings.

55. An ear rook piercing is different than an earring.

56. Defendant's grooming policy allows for jewelry to be worn so long as it is not exposed.

57. Defendant's grooming policy allows for jewelry to be worn close to the body so long as the body part is not exposed.

58. Plaintiff's ear rook piercing is not exposed.

59. Plaintiff's helmet fully covers her ear rook piercing.

60. Plaintiff had a conversation with Ms. Sanders whereby Plaintiff educated Ms. Sanders on the severity of her migraines.

61. Plaintiff provided Ms. Sanders with a comprehensive account of the severe agony endured during migraine episodes, which can last for multiple hours.

62. Plaintiff engaged in a discussion with Ms. Sanders during which the Plaintiff provided information and clarification regarding Defendant's grooming policy, which seemed unfamiliar to Ms. Sanders despite her job function with Defendant.

63. Plaintiff had a conversation with Ms. Sanders whereby Plaintiff inquired as to why her reasonable accommodation was denied.

64. Plaintiff was required to immediately remove her ear rook as a direct order issued by Ms. Sanders, which stemmed from the conversation between Plaintiff and Ms. Sanders.

65. Ms. Sanders has used extremely argumentative and intimidating tones when communicating with Plaintiff.

66. Chief Richardson has expressed to Plaintiff that he does not believe that Plaintiff is a good fit due to her requests for a reasonable accommodation.

67. Chief Richardson has alluded to recommending termination for Plaintiff due to her requests for a reasonable accommodation.

68. Defendant offered Plaintiff a reassignment to Defendant's Logistics department on or about September 19, 2023.

69. Defendant's offer to reassign Plaintiff was given approximately fifteen months after her initial request for a reasonable accommodation.

70. Plaintiff has endured significant emotional distress due to the Defendant's failure to provide accommodations and their belated, insufficient offer of a position, which occurred 15 months after the Plaintiff initially requested it.

## FIRST CLAIM FOR RELIEF
### Race Discrimination in Violation of Title VII

71. Plaintiff incorporates the foregoing paragraphs by reference herein.

72. As an African American, Plaintiff is a member of a protected class.

9

73. During her employment, Plaintiff was subjected to an adverse action, including but not limited to being reprimanded.

74. Plaintiff was treated less favorably than her Caucasian counterparts. More specifically, Plaintiff experienced racial discrimination as her Caucasian colleagues were permitted to wear earrings, while she was unjustly denied the opportunity to wear an ear rook earring, which was consistent with her reasonable accommodation request.

75. The adverse action taken against Plaintiff was motivated by her race.

76. Defendant's actions as described herein were willful and wanton and done with reckless disregard for Plaintiff's protected rights.

77. As a proximate result of the above-described discrimination, Plaintiff sustained damages including back pay, compensatory damages including emotional distress, and has incurred attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
## Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
### *(Retaliation)*

78. Plaintiff incorporates the foregoing paragraphs by reference herein.

79. Plaintiff engaged in protected activity by making multiple good faith complaints of disability discrimination.

80. During her employment, Plaintiff was subjected to an adverse action, including being reprimanded and denied a reasonable accommodation.

81. Plaintiff was treated less favorably than her counterparts who did not engage in protected activity.

82. The adverse action taken against Plaintiff was motivated by her engagement in protected activity.

83. Defendant's actions as described herein were willful and wanton and done with reckless disregard for Plaintiff's protected rights.

84. Upon information and belief, as set forth above, Defendant targeted Plaintiff for retaliatory discipline, in the form of a reprimand, because she complained about disparate treatment stemming from her disability.

85. As a result of this disability-selective and targeted retaliation, Plaintiff was ultimately reprimanded because of her disability.

86. Defendant's conduct, as described above, was without justification or excuse; is reprehensible; and occurred despite Plaintiff's complaints to prevent, halt, and reverse the discrimination and retaliation.

87. Upon information and belief, no other employees have been reprimanded and denied a reasonable accommodation for complaining about a disability or questioning Defendant's decision to deny a reasonable accommodation.

88. Upon information and belief, no other Caucasian employees have been reprimanded and denied a reasonable accommodation for complaining about a disability or questioning Defendant's decision to deny a reasonable accommodation.

89. The conduct alleged herein violates Section 704 of Title VII of the Civil Rights Act of 1964, amended, 42 U.S.C §§ 2000e *et seq.*

90. Defendant's unlawful employment practices complained of above were intentional.

91. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

92. As a proximate result of the above-described discrimination, Plaintiff sustained damages including back pay, compensatory damages including emotional distress, and has incurred attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
## Discrimination in Violation of American with Disabilities Act

93. Plaintiff hereby incorporates all foregoing paragraphs as though fully alleged herein.

94. At all relevant times, Plaintiff was diagnosed with and suffered from chronic migraines.

95. Plaintiff's diagnosed conditions constitute physical and mental conditions that substantially limit her major life activities, including concentrating, thinking, communicating, and working, among other things, and therefore constitute disabilities under the ADA, 42 U.S.C. 12101, *et seq.*

96. Defendant knew of Plaintiff's diagnoses.

97. Plaintiff was qualified for and capable of performing all the essential functions of her position as a firefighter working for Defendant with a reasonable accommodation.

98. Defendant discriminated against Plaintiff on the basis of her disability by reprimanding her, retaliating against her, and failing to provide her with a reasonable accommodation.

99. As a proximate result of the above-described discrimination, Plaintiff sustained damages including back pay, compensatory damages including emotional distress, and has incurred attorney's fees and costs.

## THIRD CLAIM FOR RELIEF
## Failure To Accommodate

100. Plaintiff realleges and incorporates by reference the foregoing allegations.

101. Plaintiff is a person with a disability protected by the ADA, 42 U.S.C §12102.

102. Establishing a prima facie case for failure to accommodate under the ADA requires a plaintiff to show "(1) that she was an individual who had a disability within the meaning of the statute; (2) the employer had notice of her disability; (3) she could perform the essential functions of her position with reasonable accommodations; and (4) the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 345 (4th Cir. 2013).

*103.* "[A]n employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible." *Shoptaw v. Walmart, Inc., 2023 U.S. Dist. LEXIS 145195, *15-16.* "'[L]iability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." *Id.*

*104.* Determining whether a given offer of accommodation by an employer constitutes a reasonable accommodation under the ADA is a question of fact. *Kerno v. Sandoz Pharmaceuticals Corp.,* 1994 U.S. Dist. LEXIS 13265, *23-22. Where the nature of the accommodation offered by an employer is undisputed and no reasonable jury could find the offered accommodation to be unreasonable, however, summary judgment is appropriate.

*105.* In some circumstances, an unreasonable delay may constitute a denial of an accommodation." *Murphy v. Cty. of New Hanover*, 2021 U.S. App. LEXIS 30275. However, "a relatively short delay of a few weeks (or even a few months) in approving a request typically does not support such a claim." *Id.*

106. Plaintiff has established that she is an individual with a disability, as she suffers from chronic migraines that substantially limits one or more major life activities.

107. Plaintiff provided Defendant with doctor's notes, medical records and detailed explanations outlining her medical diagnosis.

108. Plaintiff has successfully completed recruit school and successfully completed all of her essential job functions with a reasonable accommodation – ear rook.

109. Ms. Sanders and Defendant offered to allow Plaintiff to use a hot or cold press to treat her chronic migraines, however, a reasonable jury would not find this accommodation to be reasonable, as a hot or cold press does not mitigate the hours of excruciating pain endured by Plaintiff.

110. Defendant failed to allow Defendant to place a band aid over her ear rook, which is an accommodation that Ms. Sanders initially agreed was viable.

111. Defendant could have easily accommodated Plaintiff's request to wear a band aid over her ear rook.

112. Placing a band aid over Plaintiff's ear rook piercing would have alleviated any concerns that the piercing would interfere with her helmet and would enable Plaintiff to successfully perform her essential job duties.

113. Defendant, by way Ms. Sanders, improperly denied Plaintiff's request to wear a band aid over her ear rook piercing on the blatantly false basis that Plaintiff allegedly informed her that her ear rook was made of material that was a conductor of heat. Defendant's denial was dated August 4, 2022, approximately 7 days after Plaintiff explicitly emailed Ms. Sanders informing her that the ear rook "is **_not_** a good conductor of heat/electricity".

114. Defendant failed to engage in a good faith interactive process.

115. Defendant's unreasonable delay in offering Plaintiff reassignment constitutes a denial of a reasonable accommodation because Defendant offered Plaintiff a reassignment approximately fifteen months after she made her reasonable accommodation request.

116. But for Defendant's blatant and willful disregard for Plaintiff's reasonable accommodation, the parties would have found a reasonable accommodation that would enable Plaintiff to perform the job's essential functions.

**FOURTH CLAIM FOR RELIEF**
**Violation of Title VII 42 U.S.C. § 2000e, et. seq.**
***(Discrimination)***

117. Plaintiff re-alleges and re-incorporates the above paragraphs as if fully stated forth herein.

118. A plaintiff may establish a prima facie case of disparate treatment in violation of Title VII by showing the following: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (2019).

119. As an African American female, Plaintiff belongs to a statutorily protected category.

120. Plaintiff, was qualified for her job, as evidenced by her years of service and extensive work experience with Defendant. Additionally, Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations.

121. Plaintiff suffered adverse employment action when she was reprimanded for a disability. Plaintiff further suffered adverse action when she was improperly denied a reasonable accommodation and denied a good faith interactive process.

122. These adverse employment actions were taken with discriminatory intent as evidenced Ms. Sanders' hostile treatment and disparate treatment to Caucasian women with identical piercings.

123. Plaintiff was treated differently from similarly situated employees outside of her protected class as Plaintiff was the only African American required to remove her ear rook piercing.

124. As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

**FIFTH CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1981**
*(Discrimination)*

125. Plaintiff re-alleges and re-incorporates the above paragraphs as if fully stated forth herein.

126. A hostile work environment claim may be brought under 42 U.S.C. 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts [. . .] as is enjoyed by white citizens." *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

127. The elements for a claim of hostile work environment are the same under § 1981 as they are under Title VII. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001).

128. Further, disparate treatment claims may be brought under § 1981, and the elements of a prima facie case of disparate treatment under § 1981 are the same as those for a Title VII claim. *See Gairola v. Virginia Dep't of General Services*, 753 F.2d 1281 (4th Cir. 1985).

129. As an African American, Plaintiff belongs to a statutorily protected category.

130. Plaintiff, was qualified for her job, as evidenced by her years of service and extensive work experience with Defendant. Additionally, Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations.

131. Defendant discriminated against Plaintiff as previously described herein including but not limited to a hostile work environment, being unjustly reprimanded for a disability, being improperly denied a reasonable accommodation, and denied a good faith interactive process.

132. These actions were taken with willful and wanton disregard of Plaintiff's rights under § 1981.

133. As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered humiliation, degradation, emotional distress, lost wages, compensatory damages, and other damages to be determined at a trial of this matter.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

134. Plaintiff re-alleges and re-incorporates the above paragraphs as if fully stated forth herein.

135. To state a claim for intentional infliction of emotional distress, plaintiff must allege facts sufficient to show the following three elements: (1) extreme and outrageous conduct, (2) which is intended to cause or with reckless indifference to the likelihood that they will cause, (3) severe emotional distress to another. *Dickens v. Puryear*, 302 N.C. 437, 453 (1981).

136. Ms. Sanders' acts of discrimination, including but not limited to, her blatant mischaracterization of Plaintiff's July 28, 2022, email as the basis for a reasonable accommodation denial, coupled with her hostile tone with Plaintiff on multiple occasions were extreme and outrageous.

137. Ms. Sanders performed this conduct with intent to cause or with reckless indifference to the likelihood that it would cause Plaintiff's severe emotional distress, as evidenced by Ms. Sanders' continued hostility of Plaintiff, denial of a medical accommodation, and conduct severely effecting Plaintiff's employment, health, and livelihood.

138. Plaintiff suffered severe emotional distress and mental anguish as result of the hostile work environment and adverse employment actions.

139. At all relevant times, Ms. Sanders was acting within the scope of her employment. Thus, Defendant is vicariously liable under the doctrine of *respondeat superior*.

140. As a direct and proximate result of the conduct described herein, Plaintiff has suffered and is entitled to recovery of damages to be determined at a trial of this matter.

## SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

141. Plaintiff re-alleges and re-incorporates the above paragraphs as if fully stated forth herein.

142. Under North Carolina state law, a cause of action for negligent infliction of emotional distress is established when the defendant negligently engaged in conduct in which it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and the conduct did in fact cause the plaintiff severe emotional distress. *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 334 N.C. 669, 435 S.E.2d 320 (1993) (citing *Johnson v. Ruark Obstetrics and Gynecology Assocs.*, 327 N.C. 283, 395 S.E.2d 85 (1990)).

143. Ms. Sanders, as a HR representative, had a duty to exercise reasonable care to avoid cause emotional distress to Plaintiff.

144. Ms. Sanders' discriminatory conduct as alleged hereinabove breached her duty of care owed to Plaintiff.

145. Ms. Sanders could reasonably foresee that her conduct, including but not limited to, his continued hostility of Plaintiff, denial of a medical accommodation, and conduct severely effecting Plaintiff's employment, health, and livelihood.

146. Plaintiff suffered severe emotional distress as result of Ms. Sanders' actions.

147. At all relevant times, Ms. Sanders was acting within the scope of her employment. Thus, Defendant his vicariously liable under the doctrine of *respondeat superior*.

148. As a direct and proximate result of the conduct described herein, Plaintiff has suffered and is entitled to recovery of damages to be determined at a trial of this matter.

**DAMAGES**

149. As a result of the aforementioned conduct, Plaintiff has sustained permanent injury to her reputation; economic injuries; emotional and mental injuries; violation of her integrity; loss of valuable time; embarrassment, humiliation, compensatory damages; punitive damages; and all other injuries set forth above.

WHEREFORE, Plaintiff, Mariah Grade, respectfully requests prays:

150. That the Court empanel a jury to hear her cause;

151. A judgment declaring that the practices complained of herein are unlawful and in violation of the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.;*

152. actual compensatory damages pursuant to 42 U.S.C. § 12117, including but not limited to, lost wages, lost job benefits, physical and mental suffering, in an amount undetermined, but believed to be in excess of $75,000.00;

153. costs, disbursements, and attorneys' fees pursuant to 42 U.S.C. § 12117;

154. All damages which Plaintiff has sustained because of Defendant's conduct, including back pay, benefits, general and specific damages for lost compensation, and job benefits she would have received but for Defendant's retaliatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

155. Exemplary and punitive damages in an amount commensurate with Defendant's ability and to deter future malicious, reckless, and/or intentional conduct;

156. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

157. Pre-judgment and post-judgment interest, as provided by law;

158. That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

159. Granting Plaintiff other and further relief as this Court finds necessary and proper.

160. Plaintiff also seeks injunctive relief, including, but not limited to:

    a) Training regarding the prohibition against retaliation for engaging in protected activity for all of Defendant's supervisors;

    b) Training regarding the prohibition against discrimination for engaging in protected activity for all of Defendant's supervisors;

    c) Training of all employees regarding retaliation, including the reporting procedures for reporting such retaliation, conducted by reputable outside vendors;

    d) Supervisory discipline up to and including termination for any employee who engages in discrimination based upon disability, including any employee who engages in retaliatory practices; and

e) Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief.

161. Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

This the 14th day of January, 2024.

/s/M. Anthony Burts II
M. Anthony Burts II
Attorney for Plaintiffs
N.C. State Bar No.: 49878
2520 Sardis Road North, Suite 234
Charlotte, NC 28227
Telephone (704) 751-0455